IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DWAYNE STEVENS,
    Petitioner

v.

GEORGE MILLER, et al.,
    Respondents

No. 1:19-cv-1758

(Judge Kane)

## MEMORANDUM

On October 9, 2019, pro se Petitioner Dwayne Stevens ("Petitioner"), who is presently incarcerated at the State Correctional Institution in Waymart, Pennsylvania ("SCI Waymart"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking to challenge decisions of the Pennsylvania Board of Probation and Parole ("PBPP") to recalculate his sentence after his parole was revoked and deny him reparole. (Doc. No. 1.) Petitioner also submitted a memorandum of law in support of his § 2254 petition (Doc. No. 2) and a motion for leave to proceed in forma pauperis (Doc. No. 3). In an Order dated October 24, 2019, the Court granted Petitioner leave to proceed in forma pauperis and directed Respondents to respond to the petition. (Doc. No. 8.) After receiving an extension of time to do so (Doc. Nos. 10, 12), Respondents filed their response on December 11, 2019 (Doc. No. 13). After receiving an extension of time to do so (Doc. Nos. 14, 15), Plaintiff filed a traverse on January 31, 2020 (Doc. No. 16) and a supplemental traverse on February 13, 2020 (Doc. No. 17). Accordingly, Petitioner's § 2254 petition is ripe for disposition.

### I.     BACKGROUND

On August 27, 1992, the Court of Common Pleas for Philadelphia County, Pennsylvania sentenced Petitioner to serve at least five (5), but no more than twenty (20), years' incarceration for aggravated assault. (Doc. No. 13-1 at 2.) At that time, Petitioner's controlling minimum

sentence expired on June 10, 1997, and his controlling maximum sentence expired on June 10, 2012.  (Id.)  On January 11, 1999, the PBPP granted Petitioner parole to a community corrections center for a minimum of four (4) months.  (Id. at 6.)

On May 28, 2002, the PBPP recommitted Petitioner to incarceration for eighteen (18) months as a convicted parole violator for committing the offense of terroristic threats.  (Id. at 10.)  On August 12, 2002, the PBPP recalculated Petitioner's maximum sentence expiration date to be May 22, 2015.  (Id. at 12.)  On February 9, 2005, the PBPP released Petitioner on reparole to a community corrections center.  (Id. at 14.)

On April 5, 2007, the PBPP recommitted Petitioner to incarceration for three (3) months for committing the offense of possession of a controlled substance.  (Id. at 19.)  Petitioner's maximum sentence expiration date was recalculated to be March 14, 2016.  (Id.)  On October 26, 2007, the PBPP reparoled Petitioner to a drug and alcohol treatment program.  (Id. at 21-23.)

On September 29, 2010, the PBPP recommitted Petitioner to a parole violator center as a technical parole violator for changing his residence without permission.  (Id. at 25.)  Petitioner's maximum sentence expiration date was recalculated to be July 26, 2016.  (Id.)  On June 24, 2013, the PBPP recommitted Petitioner again as a technical parole violator for violating multiple technical parole violations, including changing his residence without permission and failing to report as instructed.  (Id. at 28.)  Petitioner's maximum sentence expiration date was recalculated to be November 24, 2016.  (Id.)  On November 24, 2013, the PBPP released Petitioner on reparole.  (Id. at 32.)

On September 16, 2016, the PBPP recommitted Petitioner to a state correctional institution as a convicted parole violator to serve twenty-four (24) months for committing the offense of aggravated assault—causing injury with a weapon.  (Id. at 34.)  The PBPP

2

recalculated Petitioner's maximum sentence expiration date to be September 21, 2022. (Id.) On September 23, 2016, Petitioner filed a petition for administrative review to challenge the PBPP's decision regarding the recalculation of his maximum sentence expiration date. (Id. at 37.) On January 5, 2018, the PBPP responded to Petitioner's request for administrative review and affirmed the recalculation decision issued on September 16, 2016. (Id. at 41-42.) On April 30, 2019, the PBPP denied Petitioner reparole for the following reasons: (1) his risk and needs assessment indicating his risk to the community; (2) his prior unsatisfactory parole supervision history; (3) reports, evaluations, and assessments indicated that he posed a risk to the community; and (4) his failure to demonstrate motivation for success. (Id. at 44.) On October 9, 2019, Petitioner filed the instant § 2254 petition, alleging that the PBPP's denial of reparole as well as its recalculation of his maximum expiration date violates his rights under the Due Process Clause of the Fourteenth Amendment. (Doc. Nos. 1, 2.)

## II. DISCUSSION

Respondents assert that Petitioner's § 2254 petition should be denied for the following reasons: (1) Petitioner failed to exhaust his state court remedies for the claims raised in his petition; (2) Petitioner's challenge to the PBPP's September 14, 2016 recalculation of his maximum expiration date is untimely; and (3) Petitioner's claims lack merit. (Doc. No. 13.) The Court considers each in turn below.

### A. Exhaustion

Before seeking federal habeas corpus relief, the provision of the federal habeas corpus statute at 28 U.S.C. § 2254(b) requires a state prisoner to exhaust available state-court remedies. To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral

3

review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996). To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts the state courts on notice that a federal claim is being asserted. See McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).

A petitioner must invoke "one complete round" of the applicable state's appellate review process, thereby giving the courts of that state "one full opportunity" to resolve any issues relevant to such claims. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (holding that a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest court before exhaustion would be considered satisfied). The exhaustion doctrine is rooted in the tradition of comity, and the state must be given the "initial opportunity to pass upon and correct alleged violations of its prisoners' [constitutional] rights." See Alston v. Diguglielmo, No. 07-cv-2618, 2009 WL 2096214, at *2 (E.D. Pa. July 14, 2009). The petitioner has the burden of establishing that exhaustion has been satisfied. See Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000).

To properly exhaust a claim involving a determination by the PBPP, a petitioner must first file a petition for administrative review with the PBPP within thirty (30) days of the mailing date of the PBPP's decision. See 37 Pa. Code § 73.1(a). After that administrative appeal, the petitioner must present his claims to the Commonwealth Court of Pennsylvania. See 42 Pa. Cons. Stat. Ann. § 763(a); see also Bronson v. Pa. Bd. of Prob. and Parole, 491 Pa. 549, 556-58 (1980). If dissatisfied with the Commonwealth Court's decision, the petitioner must then file a petition for allowance of appeal with the Supreme Court of Pennsylvania. See 42 Pa. Cons. Stat.

4

Ann. § 724; see also McMahon v. Pa. Bd. of Prob. and Parole, 504 Pa. 240, 241-42 (1983). If a petitioner fails to seek review from the Supreme Court of Pennsylvania, his claims are unexhausted. See Williams v. Wynder, 232 F. App'x 177, 181 (3d Cir. 2007).

In the instant case, Petitioner fails to demonstrate that he satisfied these exhaustion requirements. The record before the Court reflects that on September 23, 2016, Petitioner filed a petition for administrative review to challenge the PBPP's recalculation of his maximum sentence date. (Doc. No. 13-1 at 37.) On January 5, 2018, the PBPP responded to Petitioner's administrative petition and affirmed the recalculation of his sentence. (Id. at 41-42.) There is no indication before the Court that Petitioner appealed that decision to the Commonwealth Court. Moreover, there is no indication before the Court that Petitioner sought administrative review of the PBPP's April 30, 2019 decision denying him reparole. As such, Petitioner has not exhausted his state court remedies, and the time to do so has expired.

Petitioner's failure to fully exhaust his claims at the state level constitutes an independent and adequate state ground sufficient to support a procedural default of his claims. See Padua v. Pa. Bd. of Prob. and Parole, No. 3:15-cv-823, 2016 WL 6662707, at *2 (M.D. Pa. Nov. 10, 2016) (citing Barnhart v. Kyler, 318 F. Supp. 2d 250 (M.D. Pa. 2004)). The Court, therefore, cannot review the merits of his claims unless Petitioner demonstrates either cause and actual prejudice or that a fundamental miscarriage of justice will result if the Court does not review his claims. See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate "cause" for a procedural default, Petitioner must provide some objective external factor which impeded his efforts to comply with the state's procedural rules. See Murray v. Carrier, 477 U.S. 478, 499 (1986). "Prejudice" will be found only if Petitioner can demonstrate that the outcome of the state proceeding was "unreliable" or

"fundamentally unfair" as a result of the violation of federal law. See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993).

In his § 2254 petition, Petitioner avers that the PBPP "allows no provisions to contest parole denials and sanctions" and that "there does not exist a means to raise an issue on the administrative level." (Doc. No. 1 at 5-11.) As discussed above, that is simply not true. In his traverse, Petitioner contends that it would be futile to exhaust his claim because "the parole system is broken and requires a system-wide fix." (Doc. No. 16 at 3-4.) Plaintiff suggests further that the exhaustion requirement is not jurisdictional and appears to contend that a fundamental miscarriage of justice would occur because he has completed his sentence. (Id. at 4-5.) Petitioner is correct that that the exhaustion requirement is not jurisdictional in the habeas context. See Granberry v. Greer, 481 U.S. 129, 131 (1987) (noting that a district court may deny a claim on its merits despite non-exhaustion "if it is perfectly clear that the applicant does not raise even a colorable federal claim"). As discussed infra in Part II.C.a, however, the Court has concluded that Plaintiff's claim challenging the recalculation of his maximum sentence expiration date lacks merit. Petitioner, therefore, has established neither cause and prejudice nor a fundamental miscarriage of justice to overcome the procedural default of his claims. See Cristin v. Brennan, 281 F.3d 404, 412 (3d Cir. 2002). For that reason alone, his § 2254 petition is subject to dismissal. Nevertheless, the Court will address Respondents' other arguments below.

**B.     Timeliness of Petitioner's Recalculation Claim**

Respondents next assert that Petitioner's claim challenging the PBPP's recalculation of his maximum sentence expiration date is untimely. (Doc. No. 13 at 10-11.) Under 28 U.S.C.

§ 2244(d), a state prisoner is subject to a one-year statute of limitations for the filing of a federal habeas corpus petition pursuant to 28 U.S.C. § 2254. This statute provides that:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28. U.S.C. § 2244(d).

Under this statute of limitation, a prisoner generally must file a federal habeas corpus petition within one year of the date his conviction became final. See 28 U.S.C. § 2244(d)(1)(A). Here, the applicable starting point for the statute of limitation is the "conclusion of direct review or the expiration of the time for seeking such review." See id. On January 5, 2018, the PBPP affirmed its September 14, 2016 recalculation of Petitioner's maximum sentence expiration date. (Doc. No. 13-1 at 41-42.) Petitioner did not seek further appellate review by the Commonwealth Court of Pennsylvania. Consequently, the statute of limitations for this claim began to run on February 5, 2018, thirty (30) days after Petitioner could have appealed the PBPP's decision to

7

the Commonwealth Court. See Commonwealth v. Hoban, No. 2288 EDA 2015, 2016 WL 5266567, at *1 (Pa. July 18, 2016). Petitioner, therefore, had one (1) year from February 5, 2018, or until February 5, 2019, to timely file a federal habeas petition challenging the PBPP's recalculation date. The instant habeas petition was filed on October 5, 2019, when Petitioner asserts he placed it in the prison mailing system for mailing to this Court. (Doc. No. 1 at 14); see Houston v. Lack, 487 U.S. 266, 276 (1988) (holding that a prisoner's document is filed at the time he places it in the prison mailing system for forwarding to the court). Nothing in the record before the Court supports a conclusion that Petitioner is entitled to statutory or equitable tolling of the statute of limitations. As such, his claim challenging the PBPP's recalculation of his maximum sentence date is jurisdictionally time-barred.[1]

### C. Merits of Petitioner's Claims

#### a. Recalculation Claim

Petitioner suggests that, as of the time his § 2254 petition was filed, he had spent 1,455 days "over the judicially imposed maximum sentence imposed on June 10, 1992." (Doc. No. 2 at 4.) Petitioner suggests that the PBPP did not credit him for prior time spent in custody as well as time spent on parole. (Id. at 3-4.) Even if Petitioner's claim regarding the recalculation of his maximum sentence date was exhausted and timely filed, he would not be entitled to relief on this claim.

In Pennsylvania, "a parolee may be recommitted as a convicted parole violator if the parolee commits any crime punishable by imprisonment, while on parole, from which he is convicted or found guilty." See Black v. Pa. Parole Bd., No. 3:15-cv-949, 2019 WL 1714478, at *5 (M.D. Pa. Jan. 30, 2019) (citing 61 Pa. Cons. Stat. Ann. § 6138(a)(1)), report and

---

[1] Petitioner's traverse does not address Respondents' argument that this claim is time-barred.

recommendation adopted, 2019 WL 1651379 (Apr. 17, 2019). The statute provides further that a convicted parole violator "shall be given no credit for the time at liberty on parole." See 61 Pa. Cons. Stat. Ann. § 6138(a)(2). Thus, unless the PBPP decides to award credit in such a situation, "the parolee is obligated to serve the remainder of the term which he would have been compelled to serve had he not been paroled, with no credit given for street time." See id.; see also Black, 2019 WL 1714478, at *5. When the PBPP "recomputes the time yet served on the original sentence, the convicted parole violator's street time is added to the original maximum sentence expiration date to create a new maximum expiration date." See Black, 2019 WL 1714478, at *5 (citing Palmer v. Pa. Bd. of Prob. and Parole, 704 A.2d 195, 197-98 (Pa. Commw. Ct. 1997).

In the instant case, when Petitioner was released on reparole on November 24, 2013, his maximum sentence date was November 24, 2016, leaving 1,096 days remaining on his sentence. (Doc. No. 13-1 at 32, 41-42.) As a convicted parole violator, Petitioner forfeited all time that he had spent at liberty while on parole from January 22, 2008 until January 19, 2010 and from November 9, 2010 until January 23, 2013. (Id. at 41.) Petitioner, therefore, had a total of 2,630 days remaining on his sentence based on his commitment as a committed parole violator. (Id.) The PBPP did award Petitioner credit for 335 days when Petitioner was in custody solely on the PBPP's detainer. (Id. at 41.) Petitioner was not available to commence service of his sentence until June 9, 2016, when he was available to the PBPP following service of a sentence imposed by New Jersey. (Id. at 41-42.) By adding 2,295 days to June 9, 2016, the PBPP recalculated Petitioner's maximum sentence expiration date to be September 21, 2022. (Id. at 42.) The PBPP's decision was, therefore, proper. Moreover, Petitioner has no constitutional right to receive credit for time spent on parole in the calculation of his maximum sentence. See

9

Morrissey v. Brewer, 408 U.S. 471, 480 (1972). Accordingly, the Court will deny Petitioner's claim challenging the PBPP's recalculation of his maximum sentence expiration date.

### b. Denial of Reparole Claim

Petitioner also suggests that the PBPP violated his due process rights by arbitrarily using "permissible factors [for whether parole should be granted or denied] impermissibly." (Doc. No. 2 at 1.) According to Petitioner, "[t]he factors that had existed from the beginning were used as factors in the parole denial then arbitrar[ily] and capriciously used later as a means to factor for another denial." (Id. at 1-2.) Even if Petitioner had exhausted this claim, he would not be entitled to relief.

The United States Supreme Court has held that the granting of parole prior to the expiration of a prisoner's maximum term of imprisonment is not a liberty interest protected by the Fourteenth Amendment's Due Process Clause. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979). However, while Petitioner has no procedural due process right to parole, the Commonwealth of Pennsylvania may not deny parole on constitutionally impermissible grounds, such as race, or in retaliation for Petitioner's exercise of his constitutional rights. See Burkett v. Love, 89 F.3d 135, 140 (3d Cir. 1996); see also Block v. Potter, 631 F.3d 233, 236 (3d Cir. 1980). Moreover, the PBPP cannot base its parole decisions on factors bearing no rational relationship to the Commonwealth's interests. See Block, 631 F.3d at 237. Therefore, "inmates may not be denied parole for reasons that would offend principles of substantive due process, and . . . parole denials may not be motivated by arbitrary or constitutionally impermissible reasons." See Black, 2019 WL 1714478, at *5. It is clear, however, that "federal courts . . . are not to second-guess parole boards, and the requirements of substantive due process are met if there is some basis for the challenged decision." See

10

Hunterson v. DiSabato, 308 F.3d 236, 246 (3d Cir. 2002); see also Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001). Moreover, the "relevant level of arbitrariness required to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.'" See Hunterson, 308 F.3d at 247.

In the instant case, on April 30, 2019, the PBPP denied Petitioner reparole after interviewing Petitioner and reviewing his file. (Doc. No. 13-1 at 44.) The PBPP denied Petitioner reparole for the following reasons: (1) Petitioner's risk and needs assessment indicated that he is a risk to the community; (2) Petitioner has a prior unsatisfactory parole supervision history; (3) reports, evaluations, and assessments indicated that Petitioner poses a risk to the community; and (4) Petitioner's failure to demonstrate motivation for success. (Id.) The PBPP's stated reasons, therefore, plainly had a substantive and reasonable basis. While Petitioner may disagree with the PBPP's decision denying him reparole, he has not demonstrated that the PBPP's decision was arbitrary or conscience shocking. Thus, the Court will deny his claim challenging the PBPP's April 30, 2019 denial of reparole.

### III.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding initiated pursuant to 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322,

327 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). In the case at bar, jurists of reason would not find the Court's disposition of this case debatable. Accordingly, the Court will not issue a COA in this case.

## IV.     CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) will be denied and a COA will not issue. An appropriate Order follows.